IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LEGACY GYMNASTICS, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARCH INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-4214<br><br>COMPLAINT<br><br>Class Action<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Legacy Gymnastics, LLC ("Plaintiff"), individually and on behalf of all other similarly situated entities, for its Class Action Complaint against Defendant Arch Insurance Company ("Defendant"), states and alleges as follows:

**NATURE OF ACTION**

1. Plaintiff is located in Lexington, Kentucky and offers gymnastics, cheerleading, and dance programs for children of all ages in its 70,000+ square foot facility.

2. As a result of, and in connection with the COVID-19 pandemic and related governmental restrictions on non-essential business, Plaintiff ceased normal operations and closed its facility in the middle of March 2020. Although Plaintiff has since reopened in a limited capacity, revenues are still down significantly since reopening, as a direct result of COVID-19.

3. Plaintiffs have sustained hundreds of thousands of dollars of losses due to COVID-19.

4. Fortunately – or so it thought – Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of an event such as COVID-19.

1

5. Plaintiff made a claim for coverage under the Policy for insured direct physical loss of or damage to Covered Property caused by a Covered Cause of Loss (defined as "Direct Physical Loss Or Damage"), asking for Defendant's confirmation as to coverage with respect to each and every potentially applicable basis for coverage under all provisions of the Policy.

6. Defendant denied Plaintiff's claim for coverage under the Policy.

7. According to Defendant, COVID-19 cannot under any set of facts or circumstances cause physical loss of or damage to property within the meaning of the Policy. Defendant also contends the government shutdown orders were not issued due to physical loss of or damage to property, and therefore do not trigger coverage under the Policy's Civil Authority provision.

8. Defendant's denial of Plaintiff's claim for coverage is not unique. Based on other lawsuits and other publicly available information, it appears that Defendant is taking a consistent position with other insureds across the country.

9. Defendant's conduct is particularly galling in light of the huge amount of premiums insurers like Defendant receive annually. According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

10. This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by the property insurance policies it sold to Plaintiff and other insureds.

## PARTIES

11. Plaintiff Legacy Gymnastics, LLC is a Kentucky limited liability company with its principal place of business in Lexington, Kentucky.

12. The Policy covers Plaintiff's 70,000+ square foot gym facility located at 261 Ruccio Way, Lexington, Kentucky.

13. As a result of, and in connection with the COVID-19 pandemic and related governmental restrictions, and due to the presence of COVID-19 on and near Plaintiff's insured property and surrounding areas, Plaintiff ceased normal operations and effectively closed its facility in mid-March 2020 and has not yet been able to resume normal operations and use of its insured property in the same manner as it had prior to the COVID-19 pandemic .

14. COVID-19 was and has been physically present on Plaintiff's premises, equipment, and surrounding areas since at least March 2020. During Plaintiff's normal operations, there are hundreds of participants, parents, and instructors on Plaintiff's property on a daily basis. Given the nature of the virus and its community spread (as more fully discussed below), persons infected with COVID-19 have been present on Plaintiff's facility and equipment. As more fully discussed below, studies have shown that COVID-19 spreads through droplets and aerosols. Aerosols in particular are capable of traveling long distances through the air. Due to community spread of the virus, COVID-19 has reached and been physically present on Plaintiff's facility and equipment after traveling through the air, independent of any individual. Thus, the virus has been present throughout Plaintiff's insured property and surrounding areas – a dangerous condition by any measure. Finally, because COVID-19 spreads widely through the community, it has been present in the air and on surfaces on property surrounding Plaintiff's property.

15. The presence of COVID-19 on property and in the air at property effectively eliminates the utility and habitability of such property sufficient to constitute direct physical loss of or damage to property within the meaning of the Policy. In addition, the imminent risk of the presence of COVID-19 on property and in the air at the property effectively eliminates the utility and habitability of such property sufficient to constitute direct physical loss of or damage to property within the meaning of the Policy.

16. As a result, Plaintiff's insured property was rendered unsuitable for its intended use and was subject to a variety of limitations, restrictions, and prohibitions, including by orders of applicable government entities ("Stay at Home Orders"), which are matters of public record.

17. The condition of Plaintiff's insured property has not returned to its condition pre-occurrence. COVID-19 has caused Plaintiff to suffer substantial losses (in part described above). For example, Plaintiff has lost revenue from the cancelation of substantially all of its programs for several months. And, although the facility is now opened in a limited capacity, Plaintiff has incurred substantial costs to ensure its facility and equipment are safe for participants, parents, and staff.

18. Defendant Arch Insurance Company, is a Missouri corporation, with its principal place of business in Jefferson City, Missouri.

## JURISDICTION AND VENUE

19. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in Missouri and a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division.

## FACTUAL BACKGROUND

21. The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

22. Over 1,400 Kentuckians and over 230,000 Americans have died of COVID-19 and there have been over 108,000 confirmed COVID-19 cases in Kentucky and over 9.2 million confirmed cases in the United States as of the date of this filing, according to the Coronavirus Resource Center at Johns Hopkins University.

23. Plaintiff's insured property has been rendered unsuitable for its intended use and has been subject to a variety of limitations, restrictions, and prohibitions, including by government Stay at Home Orders imposed by the State of Kentucky.

24. Plaintiff also imposed limitations, restrictions, and prohibitions due to the dangerous condition caused by the presence of COVID-19 and its on-going and continuous threat to Plaintiff's insured property.

### *COVID-19*

25. A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

5

26. Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

27. Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

28. As a result, at least 42 states and countless local governments issued substantially similar "stay at home" orders, the purpose of which was to mitigate and slow the spread of COVID-19.

29. According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[1]

30. According to studies, the virus can live on surfaces for several days if not longer.[2] The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[3]

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[2] https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[3] https://www.nejm.org/doi/full/10.1056/NEJMc2009324

31. The study also found that COVID-19 was detectable for up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel.[4]

32. All of these materials, and others similarly susceptible to COVID-19 contamination, are used by Plaintiff throughout its facilities and operations.

33. The study's results indicate that individuals can become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.

34. A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[5]

35. An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face masks, health workers' personal protective equipment, and air vents.[6]

36. The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via footwear

---

[4] https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces
[5] https://www.nature.com/articles/d41586-020-00974-w
[6] https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

contacting the droplets on the ground. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[7]

37. Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[8]

38. Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[9]

39. Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

40. In a study published on October 7, 2020, researchers at Australia's national science agency found that SARS-CoV-2 can survive for up to 28 days on common surfaces like cash, glass, vinyl, and stainless steel.[10] The study also determined that the virus survives longer at colder temperatures, a particular concern as winter approaches in the United States.

---

[7] https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[8] https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1
[9] https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#
[10] https://virologyj.biomedcentral.com/articles/10.1186/s12985-020-01418-7

41. Dr. Debbie Eagles, on the Australia study's lead researchers, said: "Our results show that SARS-CoV-2 can remain infectious on surfaces for long periods of time, reinforcing the need for good practices such as regular handwashing and cleaning surfaces."[11]

42. The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

43. A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[12] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[13]

44. The implications of airborne spread of COVID-19 are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

45. State and local governments implemented the Stay at Home Orders due to the presence of COVID-19 on property and in the air in the area within their respective jurisdictions.

---

[11] https://www.sciencedaily.com/releases/2020/10/201011220759.htm
[12] https://academic.oup.com/cid/article/58/5/683/365793
[13] *Id.*

9

Case 2:20-cv-04214-NKL   Document 1   Filed 11/02/20   Page 9 of 19

### *The Arch Policy*

46. To protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. *See* Exhibit A. The Policy was in effect at the time of the COVID-19 outbreak. Plaintiff paid all premiums required by the Policy.

47. Plaintiff is the Named Insured under the Policy.

48. Defendant is the effective and liable insurer of the Policy and policies meeting the class definition.

49. Generally, under property insurance policies like those issued by Defendant to Plaintiff and class members, the insuring agreements provide coverage for all risks of physical loss of or damage to property, unless specifically excluded.

50. The Policy is an "all-risk" policy. It covers "loss of or damage to Covered Property from any Covered Causes of Loss." Ex. A at 31. "Covered Causes of Loss" are defined as "Direct Physical Loss Or Damage to Covered Property except those causes of loss listed in the Exclusions." *Id.*

51. "Covered Property" includes "Sports Equipment and Contents" at 261 Ruccio Way, Lexington, Kentucky, and property that Plaintiff owns or is in Plaintiff's "care, custody or control." *Id.* at 29, 31.

52. The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

53. In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

54. No other portion of the Policy purports to exclude viruses from coverage under the Policy. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

55. Upon information and belief, Defendant excludes viruses from coverage in other commercial property insurance policies it issues, but, again, not the Policy subject to this lawsuit.

56. Because damage due to viruses constitutes physical damage and loss under the Policy, and the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy.

57. Furthermore, Plaintiff's property includes several "foam pits" consisting of thousands of pieces of foam providing a soft surface onto which students can land safely, reducing the risk of injury. This foam, and other Plaintiff property, cannot be cleaned and must be replaced. Plaintiff has covered these "foam pits" and completely prohibited their use during the pandemic. Plaintiff intends to eventually replace the costly foam, once the foam pits become safe for use again. The replacement cost is covered by the Policy.

11

58. Moreover, Plaintiff suspended operations and effectively closed its entire facility for a period of time due to COVID-19. Plaintiff has not yet been able to resume normal operations or use of its property in the same manner as it had prior to the COVID-19 pandemic.

59. The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here, including, but not limited to, the following listed in the "Miscellaneous Articles for Sports Facility Equipment Coverage" form. *Id.* at 31-39.

60. The Policy provides coverage for **"Business Income and Extra Expense"** incurred when "covered property is damaged by a Covered Cause of Loss" – that is, "Direct Physical Loss Or Damage to Covered Property." *Id.* at 33-34.

61. "Business Income" means "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred during the 'period of restoration;' and continuing normal operating expenses including payroll." *Id.* at 34. "Extra Expense" means "necessary expenses you incur during the 'Period of Restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* at 34. Plaintiff has suffered Business Income losses and incurred Extra Expense due to the presence and threat of COVID-19.

62. The Policy further provides coverage for an interruption to business caused by an order from a **"Civil Authority."** Ex. A at 34. Specifically, the Policy covers "the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the describe premises, caused by or resulting from any Covered Cause of Loss." *Id.* Access to Plaintiff's property has been limited, restricted, and prohibited in part or in total due to the presence and threat of COVID-19 and related Stay-at-Home Orders.

12

# CLASS ACTION ALLEGATIONS

63. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of itself and all others similarly situated, and seeks to represent the following nationwide classes:

   a. **Nationwide Declaratory Judgment Class.** All entities covered by one of the Defendant's policies in effect during the COVID-19 pandemic.

   b. **Nationwide Breach Class.** All entities covered by one of the Defendant's policies in effect during the COVID-19 pandemic.

   c. **Kentucky Subclass.** All entities in Kentucky that are covered by one of Defendant's policies in effect during the COVID-19 pandemic.

64. Plaintiff's Classes and the Subclass satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

65. **Numerosity.** COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, thousands or more policies issued with the relevant provisions. Consequently, the Classes each number in at least the thousands, and thus the numerosity standard is satisfied. Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Kentucky Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Kentucky Subclass members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

66. **Commonality.** There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

   a. Does the Policy cover losses resulting from the COVID-19 pandemic?

   b. Does the Policy cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

   c. Does the presence of COVID-19 on property and in the air at property eliminate the property's utility and habitability sufficient to constitute direct physical loss of or damage to property within the meaning of the Policy?

   d. Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

   e. Do any of the following provisions in the Policy cover losses due to COVID-19: (i) physical loss of or damage to property; (ii) business income and extra expense; and/or (iii) civil authority?

   f. Has Defendant breached its Policy by refusing to cover COVID-19 related losses?

   g. Are Class members entitled to reasonable attorneys' fees and expenses?

67. **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of businesses are impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to COVID-19.

68. **Typicality.** Plaintiff's claims are typical of those of the Classes as Plaintiff was subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

69. **Superiority.** A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Kentucky Subclass. The presentation of separate actions by individual Class members and Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

70. **Adequacy**. Plaintiff is an adequate representative of the Class and Kentucky Subclass because it is a member of the Class / Subclass and its interests do not conflict with the interests of those it seeks to represent. The interests of the Class / Subclass members will be fairly and adequately protected by Plaintiff and its counsel, who have extensive experience prosecuting complex class litigation.

71. **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

72. **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiff reserves the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders under specific Policy provisions.

## COUNT I: DECLARATORY JUDGMENT
**(Individually and on behalf of Nationwide Declaratory Judgment Class and Kentucky Subclass)**

73. The preceding paragraphs are incorporated by reference as if fully alleged herein.

74. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

75. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policy. Plaintiff requested coverage for COVID-19 related losses. Defendant has stated that the Policy does not provide coverage for COVID-19 related losses. Defendant is in breach of its obligations by refusing to provide coverage under the Policy. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

76. Plaintiff contends that Defendant has breached the Policy in the following respects:

    a. Plaintiff and the class have suffered losses due to COVID-19 covered by the Policy.

    b. Defendant is obligated to pay Plaintiff and the class for those losses.

    c. Defendant has failed to pay Plaintiff and the class for those losses.

77. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

## COUNT II: BREACH OF CONTRACT AND/OR ANTICIPATORY BREACH
**(Individually and on behalf of Nationwide Breach Class and Kentucky Subclass)**

78. The preceding paragraphs are incorporated by reference as if fully alleged herein.

79. Plaintiff and the class purchased property coverage policies from Defendant.

16

80. The policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

81. Plaintiff and the class substantially performed their obligations under the terms of the Policy including giving Defendant notice of the claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

82. Plaintiff and the class have sustained a loss covered by the Policy arising from COVID-19 and associated state and local Stay at Home Orders.

83. Defendant stated that the Policy does not provide coverage for COVID-19 related losses. Defendant is in breach of its obligations by refusing to provide coverage under the Policy. Moreover, upon information and belief, Defendant has refused or will refuse other, similar claims claiming that COVID-19 losses are not covered by the Policy. Defendant therefore unjustifiably refuses to pay for losses covered by the Policy, in breach of the Policy.

84. Defendant has refused to pay claims related to COVID-19 on a uniform and class-wide basis, in breach of the policies.

85. Any conditions precedent to a claim for breach of contract under the Policy has occurred, been satisfied, or, in any event, should be excused or otherwise discarded or deemed waived by Defendant on the basis of futility or other applicable law.

86. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a. That the Court enter an order certifying the class, appointing Plaintiff as representatives of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b. For a judgment against Defendant for the causes of action alleged against it;

c. For compensatory damages in an amount to be proven at trial;

d. For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

e. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

f. For Plaintiff's attorney's fees;

g. For Plaintiff's costs incurred; and

h. For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: November 2, 2020

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*s/ Patrick J. Stueve*
Patrick J. Stueve, MO #13847
Bradley T. Wilders, MO # 78301
Curtis Shank, MO #66221
Abby E. McClellan, MO #66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com

Email: shank@stuevesiegel.com
Email: mcclellan@stuevesiegel.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO #60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile: (816) 561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com
Email: jfeierabend@millerschirger.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
Email: kent@lelaw.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo, MO #29748
2001 Wyandotte Street
Kansas City, MO 64108
Telephone: 816-931-0500
Facsimile: 816-931-5775
Email: rlombardo@sls-law.com

**WOLTERMAN LAW OFFICE**
Matthew Metzger, Ohio 0082235, (*Pro Hac Vice* pending)
434 W. Loveland Ave.
Loveland, OH 45150
Telephone: 513-488-1135
Email: matt@woltermanlaw.com

*Attorneys for Plaintiff and the Proposed Classes*